**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **DENALI SHIPPING L.P.,** | ) | Case No. |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **-against-** | ) | |
| | ) | |
| **VAN OIL PETROLEUM LTD. and** | ) | |
| **ALVARO SOUSA (a/k/a Alvaro** | ) | |
| **Sousa Garcia),** | ) | |
| | ) | |
| **Defendants.** | ) | |

## VERIFIED COMPLAINT

Plaintiff, Denali Shipping L.P. ("Plaintiff"), by and through its attorneys, Lennon, Murphy & Phillips LLC, as and for its Verified Complaint against defendants Van Oil Petroleum Ltd. and its alter ego Alvaro Sousa (also known as Alvaro Sousa Garcia) ("Defendants"), alleges upon information and belief as follows:

## PARTIES, JURISDICTION AND VENUE

1.      This is an action to recover Plaintiff's damages sustained as a result of Defendants' wrongful arrest of Plaintiff's vessel M/V DENALI (the "Vessel") in India.

2.      Plaintiff is a foreign company duly organized under and existing by virtue of the laws of the Republic of the Marshall Islands. Plaintiff was at the time of the arrest and to this day is the owner of the Vessel.

3.      Upon information and belief, Defendant Van Oil Petroleum Ltd. was and still is a foreign company organized under and existing by virtue of the laws of the British Virgin Islands.

4.     Upon information and belief, Defendant Alvaro Sousa (a/k/a Alvaro Sousa Garcia) is an individual who resides in Peru and is the sole director, manager and owner of Defendant Van Oil Petroleum Ltd.

5.     This is an admiralty and maritime claim within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and within the meaning of Federal Rule of Civil Procedure 9(h).

6.     This action is brought pursuant to and in accordance with Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Admiralty Rule B") to obtain and maintain security for Plaintiff's claim against Defendants for the wrongful arrest of the Vessel.

7.     Venue is proper in this District in accordance with Admiralty Rule B as Defendants have property, namely real property in the form of a house or condominium located at 236 Main Street, Southport, CT 06890, as well as debts believed to be owed to the Defendants, or one of them, in the hands of certain garnishees, all of which are or will be within the physical jurisdiction of this Court during the pendency of this action.

8.     This action is brought pursuant to and in accordance with Admiralty Rule B to obtain and maintain security for legal proceedings pending in the U.S. District Court for the Southern District of Florida for the wrongful arrest of the Vessel[1].

---

[1] Plaintiff has obtained $104,353.92 in security for the claim by virtue of an Admiralty Rule B writ of maritime attachment issued within the action pending in the Southern District of Florida.  See paragraphs 33-35, *infra.*

**FACTUAL ALLEGATIONS**

**A.      The Lost Oldendorff Charter**

9.      On or about September 25, 2015, Plaintiff contracted to purchase the Vessel from Ermis Trading S.A. ("Ermis") free of any encumbrances, mortgages or liens.[2] In the event, the Vessel was delivered by Ermis to the Plaintiff on or about December 4, 2015.

10.      From the time Plaintiff purchased the Vessel until April 2018, Plaintiff traded the Vessel freely, with the expectation that no one would claim a lien for debts incurred prior to the Vessel being purchased.

11.      On February 22, 2018, Plaintiff entered into a time charter with Oldendorff Carriers GmbH & Co. KG ("Oldendorff") whereby Oldendorff agreed to charter the Vessel for a period of four months to a maximum of six months (the "Charter").

12.      Clause 44 of the Charter provides:

> Should the vessel be arrested during the currency of this Charter Party at the suit of any party having or purporting to have a claim against any interest in the vessel, hire under this Charter Party shall not be payable in respect of any period during which the vessel is not at Charterers' disposal, for the operation immediately required and any direct expenses shall be for Owners' account.

13.      Clause 99 of the Charter provides, in relevant part:

> If the vessel has been off-hire for a period of more than 30 days, the Charterers are at liberty to cancel the balance of the Charter Party, on Charterers having given 24 hours notice of their intention to exercise their option, in which case redelivery shall

---

[2] Upon information and belief, ownership of the Vessel changed originally from Citrus Shipping Corp. to Ermis Trading S.A. sometime in February 2014, and thereafter from Ermis Trading S.A. to Denali Shipping LP on or about September 25, 2015. The name of the ship also changed with each new owner from M/V MARIE PAULE to M/V ERMIS to her current name, M/V DENALI.

take place upon vessel being free from cargo, irrespective of redelivery ranges.

14.     Under the terms of the Charter, the Vessel was delivered to Oldendorff on March 6, 2018.

**B.      The Wrongful Arrest in India**

15.     On April 6, 2018, while the Vessel was on charter to Oldendorff and discharging cargo, Defendants arrested the Vessel at the port of Navlakhi, India for alleged nonpayment for bunkers (marine fuel) supplied to the M/V MARIE PAULE[3] on February 1, 2012, at the request of the Vessel's then time charterers, Allied Maritime Inc. ("Allied"), in the amount of $975,600.00, plus interest and costs, for a total claim of $1,322,565.00.[4]  A true and correct copy of the Indian Complaint is attached as **Exhibit B**.

16.     The Indian Complaint provides, in relevant part:

> 8. On 1st February 2012, [Van Oil] supplied 1,300 Mts of IFO to the Vessel M/V DENALI (IMO No. 9438016) (ex-name – MV Marie-Paule) at Callao Port, Bunker Delivery Note bearing no. 4325 was issued for the said supply.

---

[3] The former name of the Vessel was M/V MARIE PAULE.

[4] Notably, Defendants filed a complaint in Bangladesh in December 2012, and arrested the Vessel (then named MARIE PAULE) in respect of the same debt that was the subject of the Indian action. On January 24, 2013, the Supreme Court of Bangladesh High Court Division dismissed the complaint and vacated the arrest on the basis that "the liability to provide and pay fuel is on the time charterer [Allied] alone. [Van Oil has] knowledge of the same." A true and correct copy of the January 24, 2013 Decision is attached as **Exhibit A**; see Ex. A, p. 5. The Court of Bangladesh further noted, in relevant part: "There was no privity of contract between [Van Oil] and [the former owner and the Vessel]. [Van Oil has] no right to arrest the vessel as done in the present case." See Ex. A, p. 7. Accordingly, since the bunkers were ordered by the time charterer Allied, and not the former owner (or the Vessel), the court vacated the **arrest because Van Oil did not have a statutory or any other type of lien against the Vessel in rem**. Critically, Defendants not only knew its claim was time-barred when it filed its bad faith complaint in India, but Defendants also knew it did not have an in rem claim against the Vessel, based on the January 24, 2013 Decision by the Supreme Court of Bangladesh.

9. On the same day, [Van Oil] issued an Invoice bearing No. 4325 for the bunkers supplied . . . for an amount of USD 975,600. The Invoice provided that the due date for payment of invoice was 2nd March 2012.

11. On 29th February 2012, the erstwhile owners[5] of the vessel acknowledged and admitted the outstanding amount for the supply made and assured the Plaintiff that the payments will be shortly made. They also informed the Plaintiff that due to financial difficulties the company was unable to pay the outstanding.
…

24. No part of the cause of action is barred by limitation as the cause of action arose in 2012, when the invoice for the supply of bunkers fell due. [Van Oil's] General Terms and Conditions for sale of the Marine Fuel provides that the supply was governed by English Law. The English Limitation Act, 1980, Section 5 provides that '*an action founded on simple contract shall not be brought after the expiration of six years from the date on which the cause of action accrued.*' Under the law governing the terms of supply, [Van Oil] is entitled to proceed against the Defendant Vessel.  (Emphasis in original.)

**Exhibit B.**

17.    On April 6, 2018, the High Court of India issued an arrest Order and the Vessel was arrested.

18.    As a result of the arrest, on April 9, 2018, upon completion of discharge, Oldendorff placed the Vessel "off-hire" under Clause 44 of the Charter.  This meant that Oldendorff stopped making payment to Plaintiff for use of the Vessel under the Charter.

19.    Thereafter, Plaintiff made a limited appearance in the Indian action and submitted an application to dismiss Defendants' claim and to release the Vessel from arrest.

---

[5] This refers to the former owners, not Denali Shipping, but note that the correspondence on which the Defendants relied makes clear that it was not the former owners making the admission, but the time charterers, Allied Maritime.

20.     In particular, Plaintiff's primary defense of Defendants' claim was that Defendants clearly stated in their April 6, 2018 Complaint that (1) the last acknowledgment concerning payment for the bunkers was "29 February 2012"; (2) "the cause of action arose in 2012;" (3) the applicable statute of limitations is the Indian Limitation Act, 1963, and pursuant to section 15 of the said Act the period of limitation would be three years; and (4) alternatively, if the relevant statute of limitations is the English Limitation Act, which governed the bunker supply contract, the relevant period of limitation was six years. **Exhibit B**.  Accordingly, at the time Defendants filed their Complaint on April 6, 2018, it was knowingly and admittedly time-barred under either the applicable Indian or English statute of limitations.

21.     On May 3, 2018, the commercial division of the High Court of the state of Gujarat dismissed Defendants' claim against the Vessel in rem on the basis that the claim for unpaid bunkers was clearly barred by the statute of limitations under the English Limitation Act. A true and correct copy of the May 3, 2018 Decision is attached as **Exhibit C**.

22.     The Indian Court's May 3, 2018 Decision further ordered that there be a stay of execution in respect of the Vessel's release until May 11, 2018, pending any appeal by Defendants.

23.     Defendants were aware the Vessel was on charter to Oldendorff and attempted to extort a settlement from Plaintiff knowing that Oldendorff could cancel the Charter as a result of the arrest.

24.     Without any legitimate basis to appeal and purely based on bad faith in order to cause harm to Plaintiff in order to force a settlement, Defendants appealed the May 3, 2018 decision, which resulted in the Vessel being further detained.

25.     On May 10, 2018, as a result of the Vessel remaining under arrest for a period longer than thirty days, Oldendorff exercised its right to cancel the Charter under Clause 44.

26.     On May 11, 2018, the Division Bench of the High Court of the state of Gujarat dismissed Defendants' appeal. A true and correct copy of the May 11, 2018 Decision is attached as **Exhibit D**.

27.     In particular, the May 11, 2018 Decision stated, in relevant part:

> **6.6** Therefore, considering the averments and pleadings in the [complaint], even according to [Van Oil], the last acknowledgement was on 29.03.2012. Therefore, the limitation started running from 29.03.2012. Even in Paragraph-24, while pleading cause of action, it is specifically stated by the plaintiff that the cause of action arose in 2012. But by clever drafting, it is not stated from which date in the year 2012 the period of limitation started running. The only case on behalf of [Van Oil] is that the cause of action arose in 2012 when the invoice for the supply of Bunkers fell due and that as per the general terms and conditions for sale of maritime fuel, the supply was governed by English law and the English Limitation Act, 1980, Section 5, provides that 'an action founded on simple contract shall not be brought after the expiration of six years from the date on which the cause of action accrued.' Therefore, assuming that the English Limitation Act, 1980, shall be applicable, in that case also, considering the starting point of limitation from 29.03.2012, even applying the English Limitation Act which provides six years' time limit, in that case also, the period of limitation would expire on 28.03.2018. It is an admitted position that the suit has been [commenced] on 06.04.2012. Therefore, the same is clearly barred by the law of limitation. Therefore, even considering the averments in the [complaint] as they are, the suit

is clearly barred by the law of limitation even as per the English Limitation Act, 1980.

**Exhibit D.**

28.     The May 11, 2018 Decision affirmed the May 3, 2018 Decision of the commercial division of the High Court of the state of Gujarat which dismissed Defendants' case on the grounds that the claim was clearly time-barred under the English Limitation Act.

29.     The May 11, 2018 Decision further ordered that there be a stay of execution in respect of the Vessel's release until May 18, 2018, pending any appeal by Defendants.

30.     Defendants sought leave to appeal the May 11, 2018 Decision to the Indian Supreme Court, which was denied on May 22, 2018.

31.     The Vessel was eventually released from arrest on May 22, 2018.

32.     As a result of Defendants' wrongful arrest of the Vessel and its bad faith appeals, Plaintiff sustained damages in the principal amount of $842,961.00, as near as same can now be determined, for the loss of the Oldendorff Charter, cost of bunkers and port dues to recharter the Vessel, and $73,440.00 in attorneys' fees, costs and other expenses incurred in defending the action in India.

## C.     The Southern District of Florida Action

33.     On June 12, 2018 Plaintiff filed an action in the United States District Court for the Southern District of Florida[6] in which it materially asserted all of the foregoing allegations against Defendant Van Oil Petroleum Ltd. and sought and

---

[6] This action was assigned case number 18-cv-22364 and remains pending before Honorable Federico A. Moreno with trial scheduled for May 2019.

received an Admiralty Rule B Ex Parte Order authorizing issuance of a writ of maritime attachment and garnishment ("writ") to secure its wrongful arrest claim against Defendant Van Oil Petroleum Ltd.

34.     The Court granted the Ex Parte Order on or about June 28, 2018 and thereafter Plaintiff served various garnishees with the writ in order to seek to secure its claim.  On or about July 24, 2018, Plaintiff served BBVA Compass Bank's branch located within the district with the writ and Ex Parte Order and requested that the bank advise if any of Defendant Van Oil Petroleum's funds in an account maintained with the bank had been restrained.  A true and correct copy of Plaintiff counsel's July 24, 2018 letter to the bank is attached hereto as **Exhibit E**.

35.     On July 27, 2018, the bank restrained $104,353.92 of funds in said Defendant's bank account in accordance with the requirements of the Ex Parte Order and writ.  These funds represent the sole security obtained for Plaintiff's claims as of the date of the filing of this action.  As such, Plaintiff remains unsecured for $812,047.08 of its claims as more fully set forth below.

### D.     Alvaro Sousa Garcia's Use of Van Oil Petroleum's Funds / Southport Main LLC and 236 Main Street, Southport, CT

36.     During March 2018, the Defendants transacted the following amounts in a bank account maintained at BBVA Compass Bank: $1,484,936.36 of credits and $1,750,719.97 of debits. The account ending balance for March 2018 was $599,072.68.

37.     During April 2018, the Defendants transacted the following amounts in a bank account maintained at BBVA Compass Bank: $5,504,923.60 of credits and $4,257,506.02 of debits. The account ending balance for April 2018 was $333,289.07.

38.     During May 2018, the Defendants transacted the following amounts in a bank account maintained at BBVA Compass Bank: $2,894,470.81 of credits and $2,936,750.90 of debits. The account ending balance for May 2018 was $1,538,426.56.

39.     During June 2018, the Defendant transacted the following amounts in a bank account maintained at BBVA Compass Bank: $2,212,962.87 of credits and $3,740,920.83 of debits. The account ending balance for June 2018 was $10,468.60. As set forth in paragraphs 33 and 34, *supra*, June 2018 was the month in which Plaintiff filed its action in the U.S. District Court for the Southern District of Florida. On June 15, 2018, the Defendants made a transfer to another account for the benefit of an entity named Odegard Investments in the sum of $2,155,003.13.  The account balance following this transfer was approximately $5,000.

40.     During July 2018, the Defendants transacted the following amounts in a bank account maintained at BBVA Compass Bank: $418,994.50 of credits and $429,463.10 of debits. The account ending balance for July 2018 was $0.  On or about July 11, 2018 the Defendants transferred $20,000 to another account for the benefit of Defendant Alvaro Sousa Garcia.  As set forth in paragraph 35, *supra*, July 2018 was the month in which Plaintiff served BBVA Compass Bank with the Ex Parte Order and writ.

41.     During August 2018, the Defendants transacted the following amounts in a bank account maintained at BBVA Compass Bank: $0 of credits and $0 of debits. The account ending balance for August 2018 was $0.

42.     During September 2018, the Defendant transacted the following amounts in its bank account maintained at BBVA Compass Bank: $155,085.33 of credits and

$155,085.33 of debits. The account ending balance for September 2018 was $0.  The $155,085.33 was a payment made on September 13, 2018 by non-party BBC Chartering Carriers GmbH to the Defendant's bank account, which was returned by BBVA Compass Bank to BBC Chartering Carriers GmbH on September 17, 2018.

43.     Prior to the aforesaid September 2018 payment, BBC Chartering Carriers GmbH had made 13 payments to Defendant's BBVA Compass bank account dating from October 2016.

44.     At his deposition taken for the action pending in the Southern District of Florida, Defendant Alvaro Sousa Garcia stated that he recalled Van Oil Petroleum Ltd. had perhaps 2 or 3 transactions per year with BBC Chartering Carriers GmbH. A true and correct copy of the relevant portions of Defendant Alvaro Sousa Garcia's deposition transcript are attached hereto as **Exhibit F**.

45.     Also at his deposition, Defendant Alvaro Sousa Garcia also stated that he did not contact BBVA Compass Bank regarding the September 2018 payment made by BBC Chartering Carriers GmbH, that he was unaware of anyone who had made such contact with the bank on behalf of Van Oil Petroleum Ltd., but also claimed that BBC Chartering Carriers GmbH did not owe any amounts to Van Oil Petroleum Ltd. at the time of the transaction.  A true and correct copy of the relevant portions of Defendant Alvaro Sousa Garcia's deposition transcript are attached hereto as **Exhibit F**.

46.     On or about June 13, 2016, Defendant Alvaro Sousa Garcia caused to be filed articles of organization with the Secretary of the State of Connecticut for an entity named Southport Main LLC.  A true and correct copy of the notice of such filing

maintained by the State of Connecticut's online system known as C.O.N.C.O.R.D. is attached hereto as **Exhibit G**.  Such filing reflects an email address of ASOUSA@VAN-OIL.COM for Alvaro Sousa Garcia as the LLC's manager.

47.     On or about June 29, 2016, non-party Southport Main LLC[7] purchased real estate located at 236 Main Street, Southport Connecticut for $690,000.  A true and correct copy of the Town of Fairfield's records for this property available online at Vision Government Solutions is attached hereto as **Exhibit H**.

48.     On or about January 24, 2017, Defendant Van Oil Petroleum made a $50,200 payment to non-party Kelly Kinzle, 9 Center Square, New Oxford, PA 17350.  Upon information and belief, Kelly Kinzle is an antiques dealer.  See www.kellykinzleantiques.com.

49.     As of a June 6, 2017 report filed by Southport Main LLC, Defendant Alvaro Sousa Garcia remained as the LLC manager and he reflected that his residence address was 236 Main Street, Southport, CT 06890.  A true and correct copy of the notice of such filing maintained by the State of Connecticut's online system known as C.O.N.C.O.R.D. is attached hereto as **Exhibit I**.

50.     On October 24, 2017, Defendant Alvaro Sousa Garcia was sued for dissolution of marriage by non-party Maria Nelly Neumann-Galdos in the Superior Court for the State of Connecticut in the Judicial District of Stamford-Norwalk.  A true and

---

[7] Plaintiff seeks issuance of an Ex Parte Order and writ of maritime attachment naming Southport Main LLC as a garnishee to attach (a) the condominium as alter ego Defendant Sousa's property; (b) any rent payments being made by a tenant to the LLC; and (c) the LLC membership interests held by alter ego Defendant Sousa.

correct copy of the docket for case no. FST-FA17-603656-S is attached hereto as **Exhibit J**.

51.     The docket for the aforesaid dissolution action reflects that on December 4, 2017, the plaintiff therein served a request for production of documents on Defendant Alvaro Sousa Garcia.

52.     On December 6, 2017, Southport Main LLC filed an Interim Notice of Change of Manager/Member indicating that an entity named Business Development Consulting Ltd. was the new Manager/Member, and Defendant Alvaro Sousa Garcia was no longer listed as the LLC Manager.  It is unclear from this filing if there was any change to Alvaro Sousa Garcia's membership interests in the LLC.  A true and correct copy of the notice of such filing maintained by the State of Connecticut's online system known as C.O.N.C.O.R.D. is attached hereto as **Exhibit K**.

53.     Despite diligent efforts conducted to date, Plaintiff has been unable to locate any entity located within the United States known as Business Development Consulting Ltd.  An entity named Business Development Consulting, LLC, filed articles of organization in 2011 with the Secretary of the State of Connecticut for Southport Main LLC.  This entity last filed an annual report in 2012.  A true and correct copy of the notice of such last filing maintained by the State of Connecticut's online system known as C.O.N.C.O.R.D. is attached hereto as **Exhibit L**.

54.     Commencing in April 2018, and upon information and belief, Defendant Alvaro Sousa Garcia began to use the aforesaid account at BBVA Compass Bank for his own personal use and expenditures. Upon information and belief, during April 2018,

Defendant Alvaro Sousa Garcia carried out $3,624.13 in transactions with funds from such bank account for his own personal use including ATM withdrawals, restaurant purchases, and garment and/or personal items purchases.

55.     Upon information and belief, during May 2018, Defendant Alvaro Sousa Garcia carried out $10,302.16 in transactions with funds from said bank account for his own personal use including ATM withdrawals, restaurant purchases, and payment of condominium fees ($1,952.80) and property taxes ($6,070.21) for the 236 Main Street, Southport, Connecticut property which had been purchased by Southport Main LLC in 2016, although Alvaro Sousa Garcia was no longer the LLC manager as of December 2017.

56.     Upon information and belief, during June 2018, Defendant Alvaro Sousa Garcia carried out $2,348.61 in transactions with funds from such bank account for his own personal use including ATM withdrawals, restaurant purchases, and payment of condominium fees ($494.10) for the 236 Main Street, Southport, Connecticut property purchased by Southport Main LLC in 2016 although Alvaro Sousa Garcia was no longer the LLC manager as of December 2017.

## COUNT I

## WRONGFUL ARREST

57.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1-56 with the same force and effect as if the same were more fully set forth at length herein.

58.     Defendants wrongfully and in bad faith caused the Vessel to be seized under a Warrant of Arrest in India when they knowingly admitted that the claim was time-barred when the Indian Complaint was filed.

59.     In particular, the Indian Complaint provided, in relevant part:

> 8. On 1st February 2012, [Van Oil] supplied 1,300 Mts of IFO to the Vessel M/V DENALI (IMO No. 9438016) (ex-name – MV Marie-Paule) at Callao Port, Bunker Delivery Note bearing no. 4325 was issued for the said supply.
>
> 9. On the same day, [Van Oil] issued an Invoice bearing No. 4325 for the bunkers supplied . . . for an amount of USD 975,600. The Invoice provided that the due date for payment of invoice was 2nd March 2012.
>
> 11. On 29th February 2012, the erstwhile owners[8] of the vessel acknowledged and admitted the outstanding amount for the supply made and assured the Plaintiff that the payments will be shortly made. They also informed the Plaintiff that due to financial difficulties the company was unable to pay the outstanding.
> …
>
> 24. No part of the cause of action is barred by limitation as the cause of action arose in 2012, when the invoice for the supply of bunkers fell due. [Van Oil's] General Terms and Conditions for sale of the Marine Fuel provides that the supply was governed by English Law. The English Limitation Act, 1980, Section 5 provides that '*an action founded on simple contract shall not be brought after the expiration of six years from the date on which the cause of action accrued.*' Under the law governing the terms of supply, [Van Oil] is entitled to proceed against the Defendant Vessel.   (Emphasis in original.)

**Exhibit B.**

---

[8] This refers to the former owners, not Denali Shipping, but in any event this is not correct, because the correspondence relied upon by the Defendant shows that it was the time charterers, Allied, not the former owners, acknowledging and admitting the debt.

60. Defendants admitted the alleged cause of action arose between February and March 29, 2012.

61. Defendants further admitted English law governed the Marine Fuel Supply contract and, under Section 5 of the English Limitation Act, 1980, "an action founded on simple contract shall not be brought after the expiration of six years from the date on which the cause of action accrued." **Exhibit B**.

62. Defendants delayed filing their complaint in the Indian action until April 6, 2018, which was more than six years from the date on which the cause of action accrued between February and March 29, 2012.

63. Defendants acted with bad faith, malice, or reckless disregard for the Plaintiff's rights because Defendant knew and admitted that their claim was time-barred when they wrongfully arrested the Vessel in India.

64. Defendants further acted with bad faith, malice, and/or reckless disregard for the Plaintiff's rights when they appealed the May 3, 2018 Decision of the commercial division of the High Court of the state of Gujarat because the appeal caused the Vessel to remain under arrest beyond the May 11, 2018 date ordered by the court.

65. Defendants further acted with bad faith, malice, and/or reckless disregard for the Plaintiff's rights when they appealed the May 11, 2018 Decision of Division Bench of the High Court of the state of Gujarat because the appeal caused the Vessel to remain under arrest beyond the May 18, 2018 date ordered by the court.

66. As a direct, proximate, and foreseeable result of Defendants' wrongful arrest, Plaintiff has suffered $842,961.00 in damages, including the loss of the

Oldendorff Charter, cost of bunkers and port dues to re-charter the Vessel, and $73,440.00 in attorneys' fees, costs and other expenses incurred in defending the action in India.

67.     The total principal amount of Plaintiff's claim for damage sustained to the Vessel for which Plaintiff seeks issuance of Process of Maritime Attachment and Garnishment is $916,401.00, less the $104,353.92 which Plaintiff has obtained in security in the action pending in Florida, for a total of $812,047.08, no part of which has been paid although the same has been duly demanded.

<u>**COUNT II**</u>

<u>**ALTER EGO ALLEGATIONS**</u>

68.     Plaintiff repeats and alleges each and every allegation set forth in paragraphs 1-67 with the same force and effect as if the same were more fully set forth at length herein.

69.     Defendant Alvaro Sousa Garcia is the sole principal and owner of Defendant Van Oil Petroleum Ltd.  At his aforesaid deposition in the action pending in the Southern District of Florida, he provided the following testimony:

Q.     Is it fair to say, Mr. Sousa, that the Van-Oil entities I have talked about so far today, those are essentially you?

A.     Yes.

Q.     You operated them; you run them; and you own them?

A.     Yes.

A true and correct copy of the relevant portions of Defendant Alvaro Sousa Garcia's deposition transcript are attached hereto as **Exhibit F**.

70.     As reflected by Defendant Alvaro Sousa Garcia's deposition testimony, and the manner in which the bank account at BBVA Compass Bank was used (paragraphs 36-45 and 54-56, *supra*), Alvaro Sousa Garcia not only controls but thoroughly dominates Defendant Van Oil Petroleum Ltd.  Disregarding the company's purported corporate separateness, Alvaro Sousa Garcia used the corporate defendant's money for his own personal use and benefit, taking money from Van Oil's bank account to pay for fees and taxes on the 236 Main Street property, to make purchases at grocery stores, restaurants, dry cleaners, movie theaters, a sporting goods store, a pharmacy, a clothing store and other establishments, as well as making ATM withdrawals.

71.     Upon information and belief, Defendant Van Oil Petroleum Ltd. is merely a shell corporation through which Defendant Alvaro Sousa Garcia conducts his own personal business.

72.     Defendant Van Oil Petroleum Ltd. has no bona fide separate, independent identity from Defendant Alvaro Sousa Garcia.

73.     Defendant Van Oil Petroleum Ltd. is owned, operated, dominated and controlled by Defendant Alvaro Sousa Garcia.

74.     Defendants function as a single economic enterprise ultimately controlled by Defendant Alvaro Sousa Garcia as the sole shareholder, director, officer and/or manager of the corporate defendant Van Oil Petroleum Ltd.

75.     Defendant Van Oil Petroleum Ltd. is the alter ego of Defendant Alvaro Sousa Garcia because the latter so thoroughly dominated and disregarded Van Oil Petroleum Ltd.'s corporate form to the extent that he was personally carrying on Van Oil Petroleum Ltd.'s business and operation as if the same were his own, particularly by virtue of his use of Defendant Van Oil Petroleum Ltd. funds in a bank account held at BBVA Compass Bank for his own personal use.

76.     Based on the foregoing, as well as other activities, at all material times the Defendants acted as a single economic unit, with no corporate distinction between or among them, rendering each liable for the debts of the other, and all assets of each Defendant susceptible to attachment and/or restraint for the debts of Defendant Van Oil Petroleum Ltd. to Plaintiff.

## COUNT III

## ATTACHMENT UNDER RULE B AND OTHERWISE

77.     Plaintiff repeats and alleges each and every allegation set forth in paragraphs 1-76 with the same force and effect as if the same were more fully set forth at length herein.

78.     Undersigned counsel for Plaintiff has checked the website maintained by the Connecticut Secretary of State (C.O.N.C.O.R.D.) and has determined that Defendant Van Oil Petroleum Ltd. is not registered to do business in the State of Connecticut and has not appointed a registered agent for service of process.

79.     Upon information and belief, alter ego Defendant Alvaro Sousa Garcia owns real property through a corporate entity named Southport Main LLC in the form of

a condominium located at 236 Main Street, Southport, CT 06890, but he does not reside in Southport, Connecticut and, upon information and belief, he cannot be served with process in the State of Connecticut.

80.     On the basis of the foregoing, Defendants cannot be found with this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, but Defendants are believed to have, or will have during the pendency of this action, assets within this District consisting of real property owned by alter ego Defendant Alvaro Sousa Garcia as well as cash, funds, debts and/or credits in the hands of garnishees in this District.

81.     Pursuant to Admiralty Rule B, Plaintiff is entitled to attach all of the property of Defendants within this District, including, but not limited to, the condominium at 236 Main Street, Southport, CT 06890, any rents owed thereon, Defendant Alvaro Sousa Garcia's membership interests in Southport Main LLC, and any debts owed to Defendants by garnishees in the District, as security for Plaintiff's claim for wrongful arrest.

82.     Additionally, and in the alternative, Plaintiff may seek an order pursuant to Federal Rule of Civil Procedure 64 and Connecticut General Statutes Section 52-278a *et seq.* for a pre-judgment remedy to secure the sum of at least $812,047.08.

**WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Complaint;

B.     That since Defendants cannot be found in this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, the Court direct the Clerk of the Court to issue an order, pursuant to Rule B of the aforesaid Supplemental Rules, restraining and attaching all tangible and/or intangible property in whatever form or any other funds held by garnishees, upon whom a copy of the Process of Maritime Attachment and Garnishment may be served, in the amount of $812,047.08 to fully secure Plaintiff's claim, and that all persons claiming any interest in the same be cited to appear and answer the matters alleged in the Complaint;

C.     That the Court appoint a substitute process server in lieu of the United States Marshal;

D.     In the alternative, that the Court issue an order allowing a pre-judgment remedy in favor or Plaintiff against the Defendants pursuant to Federal Rule of Civil Procedure 64 and Connecticut General Statutes Section 52-278a *et seq*.;

E.     That the Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future.

F.     That Plaintiff have such other and further relief as this Honorable Court may deem just and proper.

LENNON, MURPHY & PHILLIPS LLC
Attorneys for Denali Shipping L.P.

By: _____
    Kevin J. Lennon (CT 20411)

Patrick F. Lennon (CT 11950)
1599 Post Road East
Westport, CT  06880
(203) 256-8600 – Tel.
(203) 256-8615 – Fax
klennon@lmplaw.net
plennon@lmplaw.net

## <u>VERIFICATION UNDER PENALTY OF PERJURY</u>

Pursuant to 28 U.S.C. § 1746, I, Kevin J. Lennon, verify under penalty of perjury that the following statements are true and correct:

1.      I am a of the bar of this Honorable Court and of the firm of Lennon, Murphy & Phillips LLC, attorneys for Plaintiff herein.

2.      I have read the foregoing Complaint and believe the contents thereof are true.

3.      This Verification is made by deponent and not by Plaintiff because Plaintiff is a foreign corporation, and has no officers or directors within this jurisdiction.

4.      The sources of my information and belief are documents provided by Plaintiff or obtained through discovery in a related action in the United States District Court for the Southern District of Florida bearing Docket No.18-cv-22364.

Executed on this 30th day of January, 2019.

Kevin J. Lennon