# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENALI SHIPPING, L.P., <br>　　Plaintiff, <br>　　v. <br>VAN OIL PETROLEUM LTD., <br>ALVARO SOUSA <br>　　Defendants. | No. 3:19-cv-137 (MPS) |

## RULING ON REQUEST FOR *EX PARTE* ORDER FOR PROCESS OF MARITIME ATTACHMENT

Plaintiff Denali Shipping, L.P. ("Denali") has filed suit under this Court's admiralty jurisdiction against defendants Van Oil Petroleum Ltd. ("Van Oil") and its sole director, manager, and owner, Alvaro Sousa ("Sousa"). Denali's verified complaint asserts claims for wrongful arrest against both defendants, alter ego liability against Sousa, and attachment under Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims and Certain Forfeiture Actions of the Federal Rules of Civil Procedure ("Admiralty Rule B"). (ECF No. 1.)

Denali now seeks an *ex parte* order for process of maritime attachment against defendants' property being held by certain specified garnishees within this District. In addition to the verified complaint and various exhibits attached thereto, Denali has submitted an affidavit describing counsel's efforts to serve the defendants in this District (ECF No. 9), a proposed *ex parte* order of maritime attachment (ECF No. 4), a proposed order appointing defense counsel as a special process server under Fed. R. Civ. P. 4(c) (ECF No. 10), and a memorandum of law in support of its request (ECF No. 11). Because Denali has plausibly alleged that some of the garnishees are holding or are likely to hold property of the defendants or owe a debt to the defendants, the Court will grant the request for attachment order with respect to those garnishees only and will deny the request without prejudice with respect to the remainder.

## I. Background

### A. The Arrest of the M/V Denali

According to the Verified Complaint, Denali was at all relevant times the owner of a seagoing vessel, the M/V Denali. (ECF No. 1 at ¶¶ 1–2.) On February 22, 2018, Oldendorff Carriers GmbH & Co. KG ("Oldendorff") entered an agreement to charter the M/V Denali from Denali for between 4 and 6 months (the "Charter Agreement"). (*Id.* at ¶ 11.) The Charter Agreement provided that Oldendorff did not owe payment if the M/V Denali was arrested during the term of the charter, and that Oldendorff had the option to cancel the Charter Agreement if the M/V Denali was off-hire for more than 30 days. (Id. at ¶ 12–13.)[1] The M/V Denali was delivered to Oldendorff on March 6, 2018. (*Id.* at ¶ 14.)

On April 6, 2018, Van Oil filed a complaint to arrest the M/V Denali when it reached port in Navlakhi, India for alleged nonpayment of marine fuel supplied to a previous charterer in February 2012. (*Id.* at ¶ 15; *see generally* ECF No. 1-2 at 2–19.) The High Court of India issued a warrant arresting the M/V Denali the same day. (ECF No. 1 at ¶ 17.) As result, Oldendorff placed the M/V Denali "off-hire" and stopped making payments under the Charter Agreement on April 9, 2018. (*Id.* at ¶ 18.) Following Denali's limited appearance to contest the arrest, the commercial division of the Indian High Court of the state of Gujarat dismissed Van Oil's claim against the M/V Denali on May 3, 2018 as time-barred under applicable English law, but stayed the release of the M/V Denali until May 11, 2018 pending an appeal. (*Id.* at ¶¶ 19–22; *see also* ECF No. 1-3 at 2–30.) Van Oil appealed the decision, thus staying the release. (ECF No. 1 at ¶ 24.) However, on May 10, 2018, because the M/V Denali had been "off-hire" for more than 30 days, Oldendorff exercised its right to cancel the Charter Agreement. (*Id.* at ¶ 25.) The following

---

[1] Denali does not attach the Charter Agreement to its Verified Complaint.

day, on May 11, 2018, the Division Bench of the High Court of the state of Gujarat affirmed the lower court's decision. (ECF No. 1 at ¶¶ 26–28; ECF No. 1-4 at 2–28.) Van Oil's further appeal to the Indian Supreme Court was denied, and the M/V Denali was released from arrest on May 22, 2018. (ECF No. 1 at ¶¶ 28–31.)

Denali alleges that, as a result of the loss of the Charter Agreement with Oldendorff, the port fees and fuel associated with rechartering the M/V Denali, and $73,440 in attorney's fees, costs, and other expenses in defending the arrest action in India, it has been damaged to the tune of $842,961.00. (*Id.* at ¶ 32.)

### B. The Florida Action

On June 12, 2018, Denali filed an admiralty action in the Southern District of Florida against Van Oil based on the foregoing allegations and, as here, sought *ex parte* order of attachment and garnishment against Van Oil's property in that district. (*Id.* at ¶ 33.)[2] The district court granted the *ex parte* order on June 28, 2018. (*Id.* at ¶ 34.) Denali served the *ex parte* order on of the garnishees, BBVA Compass Bank on July 24, 2018. (*Id.* at ¶ 34.) On July 27, 2018, one of the garnishees, BBVA Compass Bank, restrained $109,353.92 in Van Oil's bank account (the "BBVA account"). (*Id.* at ¶ 35.) Accordingly, Denali alleges that it remains unsecured for the remainder, or $812,047.08. (*Id.*)

### C. Sousa's Connecticut Presence

Sousa caused to be filed articles of incorporation for an entity called Southport Main LLC ("Southport Main") with the Connecticut Security of State on June 13, 2016. (*Id.* at ¶ 46; ECF No. 1-7 at 2.) At the time of filing, Sousa was Southport Main's general manager and listed a Van

---

[2] *See Denali Shipping LP v. Van Oil Petroleum Ltd.*, 1:18-cv-22364 (S.D. Fla. June 12, 2018).

Oil email address. (ECF No. 1-7 at 3.) On June 29, 2016, Southport Main purchased real estate located at 236 Main Street in Southport, Connecticut for $690,000. (ECF No. 1 at ¶ 47; ECF No. 1-8 at 2.) In a June 2017 filing with the Connecticut Secretary of State, Sousa was still listed as Southport Main's manager and still used a Van Oil email address, but 236 Main was also listed as Sousa's residence address. (ECF No. 1 at ¶ 49; ECF No. 1-9 at 2.) Southport Main filed a notice on December 6, 2017 reflecting that Sousa had ceased to be manager and that an entity named Business Development Consulting Ltd. was instead. (ECF No. 1 at ¶ 52; ECF No. 1-11 at 2.) Business Development Consulting Ltd. listed a business address as "C/O MHR Lewis (US) LLC, 595 Summer Street, Stamford, CT 06901." (ECF No. 1-11 at 2.)

In addition, on October 24, 2017, Sousa was sued for dissolution of marriage in Connecticut Superior Court in the Judicial District of Stamford-Norwalk. (ECF No. 1 at ¶ 50; ECF No. 1-10 at 2.)

### D. Sousa's Role in Van Oil

Sousa is the sole director, manager and owner of Van Oil. (*Id.* at ¶ 4.) Denali alleges that beginning in April 2018, Sousa began to use the BBVA account for personal use and expenditures. Denali alleges that between March 2018 and September 2018, the month-end account balance in the BBVA account dropped from $599,072.68 to $0. (*See generally id.* ¶¶ 36–42.) Denali further alleges that in May and June 2018, Sousa used the BBVA account to pay for his personal expenses as well as condominium fees and property taxes at 236 Main Street, even though he had not been the manager of Southport Main since December 2017. (*See id.* at ¶¶ 55–56.)

Moreover, Denali alleges that in September 2018, non-party BBC Chartering Carriers GmbH ("BBC") paid $155,085.33 to the BBVA account, which was then returned to it by BBVA. (*Id.* at ¶ 42.) Prior to this, BBC had made approximately 13 payments to the BBVA account since

4

October 2016. (*Id.* at ¶ 43.) Sousa recalled in a deposition that Van Oil had approximately 2 to 3 transactions per year with BBVA, that he was unaware of anyone who had made contact with BBVA at this time on Van Oil's behalf, and that BBC did not owe any money to Van Oil at this time. (*Id.* at ¶¶ 44–45; *see also* ECF No. 1-6 at Tr. 211:11-15, 213:23-214:6, 214:17-23.)

Finally, Denali also alleges that Van Oil made a $50,200 payment to an antiques dealer in Pennsylvania in January 2017, though it is unclear from the complaint if this is tied to the BBVA account. (*Id.* at ¶ 48.)

### E. Claims

Based on the above, Denali brings three claims against Sousa and Van Oil. First, Denali asserts a claim for wrongful arrest based on Van Oil's alleged bad faith arrest of the M/V Denali in India and its further bad faith in appealing the dismissal of the arrest complaint based on a clearly time-barred cause of action. (ECF No. 1 at ¶¶ 57–67.) Second, Denali alleges that Van Oil and Sousa are alter egos, as evidenced by Sousa's use of Van Oil's funds in the BBVA account for his personal use and benefit, and therefore that the assets of each are susceptible to attachment for the debts of the other. (ECF No. 1 at ¶¶ 68–76.) Third and finally, Denali asserts a separate claim seeking attachment of $812,047.52 of Sousa and Van Oil's property under Admiralty Rule B. (ECF No. 1 at ¶¶ 77–82.)

## II. Legal Standard

Admiralty Rule B provides in relevant part that:

> If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

Fed. R Civ. P. Supp. R. B(1)(a). "To secure an *ex parte* order of attachment under Rule B, a plaintiff bears the burden of establishing a right to attachment." *DS-Rendite Fonds Nr. 108 VLCC*

*Ashna GMBH & Co Tankschiff KG v. Essar Capital Americas Inc.*, 882 F.3d 44, 48 (2d Cir. 2018) (citation omitted). The Rule requires the following showing:

> First, a plaintiff must file a "verified complaint praying for attachment" and "an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district." Second, the complaint "may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process." Finally, the district court must then "review the complaint and affidavit and, if the conditions of ... Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment." If an attachment is ordered, "any person claiming an interest in [the attached property] shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted."

*Id.* at 49 (internal citations omitted). "As a general matter, the pleading requirements under Rule B are said to be easily met." *Id.* (citation omitted). With respect to the second step, identifying the property to be attached, the typical *Twombly* standards apply. *Id.* at 50. Accordingly, "[i]n order to render the garnishee's possession of identifiable property of the defendant plausible, the facts alleged must provide sufficient specificity either as to the nature of the business relationship between the garnishee(s) and the defendant and/or the nature of the defendant's property subject to the attachment." *Id.*

## III. Discussion

The Court concludes that Denali has met each of the above three requirements to secure an *ex parte* order of attachment, but will narrow the requested garnishees due to Denali's failure to adequately identify their connection to the defendants or the defendants' property.

The first requirement is met. Denali has filed a Verified Complaint requesting attachment (ECF No. 1 at ¶¶ 77–82) and an affidavit from counsel stating that neither Van Oil nor Sousa can be located in the District of Connecticut (ECF No. 9, Amended Affidavit of Kevin J. Lennon Pursuant to Supplemental Rule B ("Lennon Am. Aff.") at ¶¶ 2–8, 10.).

The second requirement is met with respect to only some of the garnishees. Denali seeks an *ex parte* order of attachment against the defendants' property held by the following nine garnishees: (1) Southport Main; (2) MHR Lewis (US) LLC; (3) Business Development Consulting LLC; (4) the tenant(s) of 236 Main Street, Southport, Connecticut; (5) Bank of America, 126 Post Road East, Westport, Connecticut; (6) Merlin Petroleum Co., Inc., 311 Post Road East, Westport, Connecticut; (7) LQM Petroleum Services LLC, 1 River Road, Cos Cob, Connecticut; (8) Strategic Bulk Carriers USA, 2960 Post Road, Southport, Connecticut; and (9) Penfield Tankers (Panamax), LLC, 65 Station Street, Southport, Connecticut. (ECF No. 4 at 1–2.)

With respect to garnishees (1), through (4), Denali has pleaded sufficient facts to render their possession of identifiable property of the defendants plausible. *See DS-Rendite*, 882 F.3d at 50. Specifically, Denali alleges that: Sousa caused to be incorporated and was the general manager of Southport Main (ECF No. 1 at ¶ 46; ECF No. 1-7 at 3); that Southport Main purchased real property at 236 Main Street for $690,000 (ECF No. 1 at ¶ 47; ECF No. 1-8 at 2); that Sousa used funds from a Van Oil bank account to pay property and condominium fees for 236 Main Street (ECF No. 1 at ¶¶ 55–56); that Sousa at one time listed 236 Main Street as his residence (*i.e.* he was possibly a tenant there) (ECF No. 1 at ¶ 49; ECF No. 1-9 at 2); that Business Development Consulting Ltd. became the manager of Southport Main on or before December 6, 2017 (ECF No. 1 at ¶ 52; ECF No. 1-11 at 2); and that MHR Lewis (US) LLC was listed as Business Development Consulting Ltd.'s "courtesy of" business address (ECF No. 1-11 at 2). Accordingly, the verified complaint and exhibits thereto state with sufficient specificity "the nature of the business relationship between the garnishee(s) and the defendant[s]," Van Oil and Sousa, as well as the "nature of the defendant's property subject to the attachment," specifically, funds used to pay

7

property taxes and condominium fees at 236 Main Street on Southport Main's behalf and real property at 236 Main Street itself. *DS-Rendite*, 882 F.3d at 50.

However, the verified complaint and exhibits do not contain any facts plausibly identifying a connection between the remaining garnishees and the defendants, or any of defendants' property that the garnishees might hold. With respect to Bank of America, though the verified complaint does reference Sousa's various ATM withdrawals in Connecticut (ECF No. 1 at ¶¶ 54–56, 70), it does not contain any facts suggesting that Bank of America is the holder of any account belonging to the defendants. The remaining entities also do not appear to be identified anywhere in the complaint or exhibits. Accordingly, Denali has failed to plead sufficient facts to render these garnishees' possession of identifiable property of the defendants plausible, and so the Court denies without prejudice Denali's request for an *ex parte* order of attachment with respect to entities (5) through (9). *See DS-Rendite*, 882 F.3d at 51 (affirming denial of *ex parte* attachment order where "the complaint's caption lists six companies as garnishees but nowhere alleges facts about the commercial ventures of the garnishees or their business relationships, much less transactions with the three companies named as defendants."); *Rana Mar. Co. v. A&E Petroleum Ltd.*, No. 18 CIV. 4507, 2018 WL 3059654, at *2 (S.D.N.Y. June 20, 2018) (denying application for *ex parte* order of attachment without prejudice where plaintiff failed to adequately allege that garnishee was holding defendant's property).

Finally, with respect to garnishees (1) through (4), the third step appears to be met.[3] Here, the Court's review of the complaint, exhibits, and other filings indicates that the requirements of

---

[3] Denali's memorandum of law argues that it has alleged valid *prima facie* admiralty claims for false arrest and alter ego liability against the defendants, that both defendants cannot be found within the District, that both have or will have property in the District, and that there is no statutory bar to attachment. (ECF No. 11 at 1–2.) Though plaintiff must ultimately meet its burden to show each of those elements to sustain the attachment, the Court believes that such inquiry is better

Rule B have been satisfied, and thus issuance of the attachment order is required. *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 438 (2d Cir. 2006) ("If the plaintiff's filings comply with the[] conditions [of Rule B(1)(a)], the court *must* enter an order authorizing the attachment, which the plaintiff may then serve on any persons in possession of the defendant's property located within the district." (emphasis added)), *overruled on other grounds by Shipping Corp. Of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009). Based on the record before the Court, neither Van Oil nor Sousa can be found within the District of Connecticut. (*See* Lennon Am. Aff. ¶¶ 3–8, 10; *id.* at ¶ 7 (noting that Sousa's previous testimony and an affidavit by Van Oil's lawyers indicate that Sousa currently resides in Peru). And as discussed above, Denali has filed both an affidavit stating the same and a verified complaint praying for attachment. Fed. R. Civ. P. Supp. R. B(1)(b). The conditions of Rule B thus appear to be met. *See ContiChem LPG v. Parsons Shipping Co.*, 229 F.3d 426, 434 (2d Cir. 2000) ("Although a plaintiff seeking attachment must supply, along with its verified complaint, an affidavit stating that defendant cannot be found within the district, little else is required and there need only be a hearing after the attachment is served.").

Because all three steps discussed in *DS-Rendite* appear to have been met, the Court will issue an *ex parte* attachment order with respect to the garnishees discussed above.

---

suited to a Rule E hearing following a challenge. *See Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 50–51 (2d Cir. 2008) ("After the requirements of Rule B have been met, and attachment has occurred, defendants have the opportunity under Rule E(4)(f) to contest the attachment of their property before the district court . . . . [U]nder Rule E(4)(f) . . . an attachment should issue only if a plaintiff establishes four factors: (1) that the plaintiff has a valid prima facie admiralty claim against the defendant; (2) that the defendant cannot be found within the district; (3) that the defendant's property may be found within the district; and (4) that there is no statutory or maritime law bar to the attachment."); *see also DS-Rendite Fonds.*, 882 F.3d at 51 ("[T]he availability of a swift Rule E hearing may, in a district court's discretion, allow room for a relaxed pleading standard with regard to an attachment.").

Finally, Denali also moves for its counsel to be appointed under Fed. R. Civ. P. 4(c)(2) to serve process upon the garnishees. (ECF No. 10.)  The Court will authorize the appointment as set forth below.  *See also* Fed. R. Civ. P. Supp. R. B(1)(d)(ii) (authorizing service of the summons, process, and any supplemental process by court-appointed individuals for non-vessel property).

# ORDER

IT IS HEREBY SO ORDERED, that Process of Maritime Attachment and Garnishment shall issue against all tangible or intangible property, including real property located at 236 Main Street, Southport, CT 06890, debts, credits, accounts, rents, funds, or any other effects belonging to, owed to, claimed by or being held for the Defendants, or either of them, by the following garnishees within this District:

- Southport Main LLC c/o MHR LEWIS (US) LLC, 595 Summer Street, Stamford, CT 06901;
- MHR LEWIS (US) LLC, 595 Summer Street, Stamford, CT 06901;
- Business Development Consulting LLC, 7 Watson Drive, West Simsbury, CT, 06092; and
- The tenant(s) of 236 Main Street, Southport, CT 06890;

in an amount up to $812,047.08 pursuant to Rule B of Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure; and it is further

ORDERED, that any person claiming an interest in the property attached or garnished pursuant to said Order shall, upon application to the Court, be entitled to a prompt hearing at which Plaintiff shall be required to show why the attachment and garnishment should not be vacated or other relief granted; and it is further

ORDERED, that supplemental process specifying other or additional garnishees enforcing the Court's Order may be issued by the Clerk upon application without further Order of the Court; and it is further

ORDERED, that following initial service by the United States Marshal or other designated process server upon each garnishee, supplemental service of the Process of Maritime Attachment and Garnishment, as well as this Order, may be made by way of facsimile transmission or other verifiable electronic means, including email, to each garnishee so personally served and such facsimile or other electronic transmission shall be deemed to be made within the district if it has been sent from within the district; and it is further

ORDERED that Kevin J. Lennon or any other partner, associate, paralegal or agent of Lennon, Murphy & Phillips, LLC, be, and is hereby, appointed, in addition to the United States Marshal, to serve the Process of Attachment and Garnishment and the Verified Complaint, together with any interrogatories, upon the garnishee(s) described above, and it is further

ORDERED, that service on any garnishee as described above is deemed to be effective and continuous service throughout the day from the time of such service through the opening of the garnishee's business the next day or next business day; and it is further

ORDERED, that pursuant to Federal Rule of Civil Procedure 5(b)(2)(D), each garnishee may consent, in writing, to accept service by any other means; and it is further

ORDERED, that a copy of this Order be attached to and served with the said Process of Maritime Attachment and Garnishment.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
February 25, 2019